## THOMAS J. CAMPBELL v. GEORGE BOYD.

*Roads and Bridges—Private Way, damages for neglect in repairing.*

1. A private-way was opened by the defendant for his own convenience and a bridge built over a creek which ran across it, and the public used the same with his knowledge and permission; the plaintiff sustained injury caused by the breaking in of the bridge, which the defendant knew to be unsafe, but which was apparently in good condition; *Held*, he was liable to the plaintiff in damages.

2. The duty of reparation and the liability for neglect in such cases, rest upon the defendant, by whose implied invitation the public used the way.

   (*Mulholland* v. *Brownrigg*, 2 Hawks, 349, cited and approved).

CIVIL ACTION tried at Fall Term, 1882, of BEAUFORT Superior Court, before *Gilliam, J.*

The defendant appealed.

*Mr. George H. Brown, Jr.*, for plaintiff.

No counsel for defendant.

SMITH, C. J. The defendant owns and operates a mill, that has been built and used for one hundred years, at the head of Pungo creek. A few yards below its site the creek divides, and its waters flow in two separate streams. Along its course on either side run parallel public roads each two miles distant, and from them have been constructed private-ways leading up to and meeting at the mill, and affording convenient access from the roads to it. One of these ways was opened by former proprietors, and the other in the year 1867, by the defendant.

In 187.5 or 1876, the defendant, with other owners of the intervening land, united in opening a connecting way, between those leading from the public roads, from near points in each, so as to form a direct pass-way across the two divergent streams from one road to the other, without going up to the mill. Over

17

these waters they also constructed bridges. While this direct route was opened mainly for the convenience of the defendant and his associates, whose lands were traversed, it was also used as well by the public with full knowledge of the defendant, and without objection from any one in passing between the roads.

In February, 1882, the plaintiff, with his horse, while in the use of this connecting way and passing one of the bridges, broke through, and both were precipitated into the creek and the damage sustained, for the redress of which the suit is brought.

The flooring of the bridge was sound, and there was no visible indication of weakness or decay to put a person passing over it on his guard. But the timbers underneath, and hidden by the floor, were in a rotten and unsound condition, and of this the defendant had full knowledge before the disaster.

He was at his mill and saw what occurred, and going up to the place remarked to the plaintiff that when he saw him about to enter the bridge, he thought of calling him to stop, but did not do so; that the bridge was unsafe, and he regretted he did not stop the plaintiff from crossing.

These are the material facts found by the judge, under the consent of parties that he should pass upon the evidence and ascertain the facts of the case, and our only inquiry is upon the correctness of his ruling that the defendant is liable in damages to the plaintiff, and from which the defendant appeals.

The only case in our reports bearing upon the point is that of *Mulholland* v. *Brownrigg*, 2 Hawks, 349. There, the defendant's mill-pond overflowed parts of the public road and hollow bridges had been erected, but by whom, did not appear; nor was it shown that they were built at the expense of the public. This condition of things had existed for twenty years, and the mill had been owned and operated by the defendant for the space of five years. The successive mill proprietors had kept the overflowed bed of the road and the bridges in repair. The plaintiff's wagon, loaded with goods, passing a bridge broke through, in consequence of its decayed state, and the goods were injured by

the water. The action was for this injury. It was declared by the court that as a nuisance was created by the flooding of the road, and the defendant had undertaken to remedy it in constructing the bridges, it was his duty, as that of preceding proprietors of the mill, to maintain them in a proper condition of repair, and ensure the safety of those persons, who in using the road had to pass over them, and that the damage having resulted from his negligence he was liable to the plaintiff. The proposition is asserted, that inasmuch as the defendant has undertaken to remedy a nuisance of his own creating, by constructing the bridge, he undertakes also and is bound to keep it in sufficient repair, and is answerable for the consequences of his neglect to do so.

The principle of law, in more general terms and with a wider scope, is thus expressed by HOAR, J., in *Combs v. New Bed. Con. Co.*, 102, Mass., 584. "There is another class of cases in which it has been held, that, *if a person allows a dangerous place to exist in premises occupied by him, he will be responsible for injury caused thereby, to any other person entering upon the premises* by his invitation and procurement, express or implied, and not notified of the danger, if the person injured is in the use of due care."

"The principle is well settled," remarks APPLETON, C. J., "that a person injured, without neglect on his part, by a defect or obstruction in a way or passage over which he has been induced to pass for a lawful purpose, by an invitation express or implied, can recover damages for the injury sustained, against the individual so inviting, and being in default for the neglect. *Tobin* v. *P. S. and P. R. R.*, 59 Maine, 188.

Several illustrations of the principle in its different applications will be found in Wharton on Negligence, § 826, and following.

The facts of the present case bring it within the rule thus enunciated. The way was opened by the defendant and his associates, primarily though, it was for his and their accommodation;

yet, permissively, to the general traveling public. It has, in fact, been thus used, and known to the defendant to be thus used, with the acquiescence of himself and the others; and under these circumstances it may fairly be assumed to be an invitation to all, who have occasion thus to use it, and hence a voluntary obligation is incurred to keep the bridges in a safe condition, so that no detriment may come to travelers.

Reparation is an inseparable incident of its construction, and, as the obligation to repair rests on no other, the liability for neglect must rest on those who put the bridges there and invited the public to use them.

It is true the way might have been closed, or the public prohibited by proper notices from passing over it, and no one could complain of the exercise of the right to do so, but as long as the way is left open and the bridges remain for the public to use, it is incumbent on those who constructed and maintain them to see that they are safe for all.

The law does not tolerate the presence over and along a way, in common use, of structures apparently sound, but in fact ruinous, like man-traps, inviting travelers to needless disaster and injury. The duty of reparation should rest on some one, and it can rest on none others but those who built and use the bridges, and impliedly at least invite the public to use them also. For neglect of this duty they must abide the consequences.

We hold, therefore, that there is no error, and the judgment must be affirmed.

No error.                              Affirmed.